THE STATE, ex rel. MARINER,

*vs.*

ALEXANDER T. GRAY, Secretary of State.

APPLICATION FOR MANDAMUS.

The act of the legislature of 1855, legalizing entries of school and university lands in cases where application in writing had not been made to the secretary of state, in pursuance of sections 32 and 33 of chapter 24 of the Revised Statutes, is valid.

The application to purchase school and university lands, made to the secretary of state, may impose a duty upon that officer to give to the applicant the memorandum specified in sections 32 and 33 of chapter 24 of the Revised Statutes, but no exclusive right of purchase becomes vested in the applicant, until he pays or tenders the purchase money required, or otherwise complies with the conditions of sale.

It was competent for the state to waive the written application required by statute, as well after, as before entry.

Though the written application was necessary in order to constitute a valid entry until lands entered without such written application were actually sold to another, it was competent for the legislature to legalize such entries.

The written application to purchase school lands, in pursuance of the statute, does not constitute a contract between the state and applicant; nor does the memorandum which the secretary of state is required to give the applicant, impose any legal obligation on the latter to enter and pay for the lands thus applied for; hence no right to purchase such lands vested in the applicant thereby, so as to preclude the operation of the statute of 1855.

*E. Mariner*, P. P.

*Geo. B. Smith*, Attorney-General.

*By the Court*, SMITH, J.    This is an application for a *mandamus* to compel the respondent, as secretary of state, or school commissioner, to deliver to the relator a memorandum, stating the application of the relator, for the purchase of certain school lands, describing the same and the price at which they are sold, the amount to be paid for the same, &c.

The relation sets forth, that on or about the 5th day of February, A. D. 1854, the relator presented to the respondent, sec-

retary of state, an application in writing signed by him, describing certain lots of school land, whereby he then and there applied to purchase the same, at private sale, and demanded of the respondent a memorandum, to be signed by him, stating such application, describing the lots, the price at which they were to be sold, the amount to be paid at the time of purchase, &c.; which memorandum the respondent refused to give, or to indorse his refusal to give the same thereon.

The relation further states, that the said lots are a part of the school lands of the state of Wisconsin, and that at the time of application the lots in question had been offered at public sale, and that the relator, as he believes, was the first person who made application to purchase said lots at private sale, according to law; and that said lands, at the time of said application, were subject to be sold at private sale; and that if any certificate of the sale of said lots had been issued by the commissioners of school and university lands, the same had not been done according to law, and were void; and further, that on the 6th day of March, 1854, he made a demand in writing, upon the said commissioners of school and university lands, that the holders of such certificates, if any there were, should be required to surrender the same to the commissioners to be canceled, according to law, and that he, the relator, was at the time of the application, ready and anxious to comply with the terms of sale.

Upon this relation an alternative writ of mandamus issued, to which the respondent answered and made return in substance as follows: That he admits that the relator made application in writing to the respondent, as stated in the relation, and that he refused to give the relator the memorandum; that upon such refusal he informed the relator, as a reason for such refusal, that the lots described in his said application had previously been sold according to law, and were not then subject to private entry; that said lots were, at the time of said application, and for a long time previous thereto, to wit: in the years 1851 and 1852, had been sold at private sale, according to law, to various persons, and that the relator was not the first person who made application to purchase said lots at private sale, according to law, and that such lands, at the time of the relator's application, were not

subject to be sold at private sale; and that the certificates of the previous sales had been, and were, issued to the previous purchasers thereof according to law.

To this answer the relator pleaded, denying that the said lots of land had been previously sold and certificates issued to various persons according to law, concluding to the country: *similiter,* &c.

It must be apparent that this case is not in a very convenient position for adjudication. There is nominally an issue of fact made up, which, were it material and proper, would render it our duty to send it to the circuit for trial; and the question now is, whether the issue here presented is one which ought to be sent to the circuit in the manner and form in which it is presented. In connection with this question of materiality, the parties, in open court, state the facts on which they rely, and there is no material difference in their respective allegations, and upon these facts the case is submitted.

Previous to the decision of this court in the case of *Delaplaine vs. The School Commissioners* (2 *Wis. Rep.* 423), it had been the custom to allow entries of the sale of school lands to be made without a previous application to the secretary of state, and the exhibition to the treasurer of a memorandum of such application, stating the price, the amount to be paid down, a description of the lands, &c., in accordance with sections 32 and 33 of chapter 24 of the Revised Statutes. In that case the court decided that, in order to a valid entry of the land, it was necessary for the applicant to make his application in writing, as provided by the sections of the statute before referred to.

We understand it to be admitted that these lands were entered by various persons previous to that decision, but that no application was made in writing in conformity with section 32 of the chapter aforesaid.

After the decision above mentioned, at the next session of the legislature, to obviate the inconveniences of such omission to make the application to the secretary of state in writing, an act was passed, providing as follows:

" *Section* 1. No sale by private entry heretofore made of any lot or lots of school or university lands in this state, shall be impeached or in any way impaired or effected by reason of failure of the applicant at the time of such entry, to make a written

Mariner vs. Gray.

application therefor, or of the secretary of state to file such application in his office, and the certificate of purchase therefor shall be of as full force and effect as if a written application had been made and filed at the time of such private entry.

"*Section* 2. This act shall take effect from and after its passage."

But between the time of the decision in the case of Delaplaine and the passage of this act, the relator had applied in writing for the purchase of the lands set forth and described in the exhibit attached to the relation, in conformity to the 32d section before cited.

It is admitted that this last act of the legislature cures all defects or omissions of the kind therein specified, unless conflicting rights had become vested in other persons in the meantime. But it is contended that an absolute right to purchase these lands had vested in the meantime in the relator, by virtue of his application made previous to the passage of the act last named. Such, however, is not the case. The right to purchase the school and university lands, subject to sale, is common to all alike, and rests upon the general provisions of the statute in relation to that subject. The application to purchase may impose a duty upon the secretary of state to give to the applicant a memorandum as specified in section 32, but no right becomes vested in him until he has paid the money, or otherwise complied with the conditions of sale. Nor did the application of the relator preclude the state from waiving the making of the application in behalf of those who had previously entered the land. It was competent for the state to dispense with the written application as well after as before the entry. Until the lands were actually sold to another by the commissioners, it was in the power of the state to legalize the entries already made.

It is contended by the relator, that the statute on the part of the state, and the application on the part of the relator to purchase, constituted a contract which the legislature could not impair by subsequent enactment. This, however, is a mistaken view of the law of the case. If the secretary of state had given him the memorandum on demand, he would have been under no legal obligation to take it to the treasurer and pay the amount specified therein; in other words, to enter the land. Had he failed to do so, the state would have had no right of action

Mariner vs. Gray.

against him, and could not have compelled a specific performance. What might have been the duty of the secretary of state, had not the legislature interposed, it is unnecessary now to inquire, as we have no doubt that it was competent for the legislature to pass the act of 1855, and that no right *vested* in the relator which was impaired thereby. Had an entry of the land been actually and *bona fide* consummated prior to the passage of this act of the legislature, the case might have presented a very different question. But an application to purchase is not a purchase, nor is an attempt to acquire a right to be adjudged a right vested.

Mandamus denied.