STATE OF WISCONSIN, EX REL., HUGH McINDOE.

*vs.*

DAVID W. JONES, ET AL., Commissioners of School and University Lands.

#### APPLICATION FOR PEREMPTORY MANDAMUS.

Where an applicant for the purchase of school lands filed his application in writing with the commissioners of school and university lands, and had his name entered as a purchaser on the tract book, opposite to the lands he intended to purchase, but did not present to the state treasurer a memorandum of the purchase, and pay or tender the amount of the purchase money due upon the entry, *Held,* that he acquired no vested right in the lands under such application.

An application to purchase is not a purchase; nor is a mere attempt to acquire a right to be adjudged a vested right.

*By the Court,* COLE, J.    The essential facts of this case, as they appear from the relation and answer of the respondents, or such facts as we deem it necessary to notice in deciding the motion for a peremptory writ of *mandamus* may be briefly stated as follows:

The relator, on or about the 23d day of February, 1855, by his agent, Walter D. McIndoe, made application in writing to the commissioners of school and university lands, at Madison, to purchase two section of school lands in Portage county, describing the land in his application. Byrne, a clerk in the school land bureau, then placed the name of the relator on the books of the office, opposite the tracts of land applied for; and stated to the said agent, Walter D. McIndoe, that owing to the pressure of public business, the proper certificates and papers could not then be made out, but that the land was secured to the relator, and that as soon as convenient and in

due course of business, the papers should be prepared according to the terms of the application. It further appears that on the 3d day of April following, the same agent of the relator again called at the school land office for the certificates, and found that they had not been prepared, and also that the said agent then stated to the clerk, Byrne, that he had the money deposited to pay the amount due to the state as soon as the certificates were prepared and the sum ascertained; that the state was then indebted to him, the agent, for *per diem*, as a member of the legislature for the session of 1855, in an amount about equal to what would be due on the purchase of the land, and which amount the agent proposed to apply in the payment of the land; that Byrne remarked that it was all right, and that as soon as the certificates were made out and the sum ascertained to be due, the money could be paid; and the said agent then deposited the money in the State Bank in Madison for the purpose of paying said sum when ascertained, and informed the persons in charge of the school land office that he was ready and willing on behalf of the relator to pay for the land.

About the first of July, 1855, the agent of the relator again applied to the school land office for the certificate of entry and purchase, and then learned that in the mean time, (or as the date appeared upon the book), on the 3d of March, 1855, cne Daniel Howell, a clerk in the school land office, had entered the land.

This entry, the school land commissioners, upon the petition of the relator, subsequently vacated as fraudulent and void, and recalled the certificates of purchase, but refuse and still refuse to issue certificates of purchase to the relator.

By an act of the legislature, published March 10th, 1855, Session Laws 1855, chap. 21, it was in substance provided, (sec. 1 of said act,) that every person making application to purchase any portion of the school or university lands, should by himself or his duly appointed agent, make an affidavit before some officer authorized to administer oaths, and file the said affidavit in the office of the Secretary of State, or deliver the same to the commissioners of school and university lands,

stating in the affidavit, that the applicant applied to purchase the land described therein, for his own use, and for the purpose of actual occupancy or cultivation, or for the use of an adjoining farm owned or occupied by the applicant; and further that the applicant did not own in his own name, or any person for him, a quantity of school land which, together with the land he applied to purchase, should exceed three hundred and twenty acres; and the section declared every purchase of such lands not made for the purpose of actual occupancy or cultivation by the applicant, or exceeding the quantity above limited, should be null and void. It is not pretended that the relator has taken any steps to comply with this law, contending that it cannot apply to his case, while the commissioners set it up and rely upon it as an excuse or justification for not issuing the certificates of purchase to him according to the terms of his application. It is therefore manifest that we have to consider and determine what operation this law had, if any, upon the relator's application, and his rights under the application, at the time the law took effect.

It probably would not be contended that it was incompetent for the legislature, should it think proper, to provide by law that school and university lands should be sold in limited quantites, only to such persons as would actually cultivate or occupy them, or that the legislature could not prescribe any other regulation in regard to the sale of the lands, not inconsistent with the constitution. Assuming, for the purposes of this case, what will be undoubtedly admitted, that the law first referred to is strictly constitutional, we proceed to inquire if the law interfered with, or impaired any legal vested right or interest which the relator had in the land, or more properly speaking, whether the relator had any such right or interest in the lands described in his application before the passage of this act. We are clearly of the opinion that he had no such right or interest in the land, and that the provisions of this act must be held to apply to him as well as to other citizens of the State.

Upon recurring to the facts heretofore given, it will be seen

that the relator, by his agent, on the 23d day of February, filed in the school land office, his written application to purchase two sections of land. His name was written upon the books of that office opposite the tracts he desired to purchase. What the relator wanted, was the memorandum mentioned in section 33, chap. 24, R. S., which he might take to the State Treasurer, and pay such sum as might be required for the land. Upon such payment he would obtain his certificate of purchase and entry. But owing to a pressure of public business, he could not, and did not obtain this memorandum. He made no purchase, paid no money, acquired no vested legal right in the land. As it was observed by this court in the case of the *State ex. rel. Mariner vs Gray*, 4 Wis., 380, "an " application to purchase is not a purchase, nor is an attempt " to acquire a right, to be adjudged a right vested." In principle I am unable to distinguish the present case from the one just cited. Here the relator had filed his application to purchase two sections of land, had perhaps done all that it was necessary for him to do to obtain his memorandum preparatory to paying his money. The act of the legislature intervened, and forbad his entering but three hundred and twenty acres upon certain conditions. If the rule laid down in the case of Mariner is sound, and I think it is, it seems to me that it is decisive of this motion, and that a peremptory writ must be denied.